NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANN MARIE MYERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTEGRA LIFESCIENCES CORP.,<br><br>Defendant. | Civil Action No. 24-8966 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Integra LifeSciences Corp.'s ("Defendant" or "Integra") Motion to Dismiss (ECF No. 16) Plaintiff Ann Marie Myers's ("Plaintiff") Amended Complaint (ECF No. 14). Plaintiff opposed (ECF No. 20), and Defendant replied (ECF No. 21). After careful consideration of the parties' submissions, the Court decides Defendant's motion without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, Defendant's Motion to Dismiss is granted.

**I.   BACKGROUND**

   **A.   Factual Background**[1]

In this putative class action lawsuit against Integra, Plaintiff alleges unlawful discrimination and retaliation with respect to a "penalty" that Integra imposed on employees who

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

declined to receive a vaccination for the coronavirus disease 2019 ("COVID-19"). (*See generally* Am. Compl., ECF No. 14.) The relevant facts are summarized as follows.

Plaintiff began working for Integra in 2012. (*Id.* ¶ 15.) In 2021, during the COVID-19 pandemic, Integra instituted a vaccine mandate and informed its employees that they were expected to receive a COVID-19 vaccination. (*Id.* ¶¶ 17, 20-22.) Due to Plaintiff's "religious beliefs," however, Plaintiff "could not get the vaccine." (*Id.* ¶ 18.) Accordingly, she sought a religious exemption from the vaccine mandate. (*Id.*) Integra, however, denied her request and approved only "an exceeding few" of the over forty religious accommodation requests that Integra received. (*Id.* ¶¶ 10, 11, 17-19.) Plaintiff nonetheless chose to remain unvaccinated, and as a result, Integra charged her a penalty of $46 per payroll cycle from 2021 until 2023.[2] (*Id.* ¶¶ 20-23.)

Plaintiff alleges that in withholding a portion of her and other employees' pay, Integra unlawfully discriminated against her and others similarly situated for their sincerely held religious beliefs. (*Id.* ¶¶ 43, 46.) Plaintiff further alleges that Integra denied her a promotion to the role of quality inspector in August 2022, in retaliation for her refusal to become vaccinated. (*Id.* ¶ 23.)

**B.    Procedural Background**

Plaintiff initially filed this case in the Superior Court of New Jersey. (Notice of Removal ¶ 3, ECF No. 1.) Integra timely removed the case to this Court, invoking this Court's jurisdiction

---

[2] Integra referred to this penalty as the "Covid Unvaxxed penalty." (Am. Compl. ¶ 20.)

pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).[3] (*Id.* ¶ 11.) Plaintiff subsequently filed an Amended Complaint, asserting five causes of action against Integra: (1) violation of the Ohio Prompt Pay Act, Ohio Rev. Code Ann. § 4113.15 ("Ohio Prompt Pay Act") (Count I); (2) unjust enrichment (Count II); (3) breach of contract (Count III); (4) discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") (Count IV); and (5) retaliation under Title VII (Count V). (Am. Compl. ¶¶ 41-63.)

Defendant thereafter moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] (ECF No. 16.) Plaintiff opposed (ECF No. 20), and Defendant replied (ECF No. 21).

## II.    LEGAL STANDARD

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the

---

[3] "CAFA provides federal courts with jurisdiction over civil class actions if the 'matter in controversy exceeds the sum or value of $5,000,000,' the aggregate number of proposed class members is 100 or more, and any class member is a citizen of a state different from any defendant." *Vodenichar v. Halcón Energy Props., Inc.*, 733 F.3d 497, 503 (3d Cir. 2013) (citing 28 U.S.C. § 1332(d)(2), (d)(2)(A), (d)(5)(B)). CAFA operates as an expansion of diversity jurisdiction and "authorizes federal jurisdiction over class actions even in the absence of complete diversity between the parties, except where the 'controversy is uniquely' connected to the state in which the action was originally filed." *Id.* (citation omitted). The Court finds that the threshold requirements for CAFA jurisdiction are met, and that the local controversy and home state exceptions do not apply. (*See* Am. Compl. ¶¶ 26-28 (alleging over 500 members in the putative class); Notice of Removal ¶¶ 32-35 (alleging that Plaintiff is a citizen of Ohio and Defendant is a citizen of New Jersey and Delaware); *id.* ¶¶ 21-31 (alleging that the aggregate amount in controversy exceeds $5,000,000)); *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014) ("a [defendant's] removal notice need only plausibly allege, not detail proof of, the amount in controversy" when removing a case to federal court pursuant to CAFA").

[4] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bear[s] the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**III.     DISCUSSION**

Defendant moves to dismiss Plaintiff's claims on multiple grounds. (*See generally* Def.'s Moving Br., ECF No. 16-1.) The Court begins its analysis with Plaintiff's federal claims brought

4

under Title VII (Counts IV and V), and thereafter addresses Plaintiff's claims arising under state law (Counts I, II, III).

      **A.**      **Title VII Claims (Counts IV and V)**

Plaintiff alleges that Integra discriminated and retaliated against her "sincerely held religious beliefs" in violation of Title VII. (Am. Compl. ¶¶ 53-63.) Integra contends that Plaintiff's Title VII claims are barred due to her failure to exhaust administrative remedies prior to initiating this action. (Def.'s Moving Br. 5-7.) The Court agrees. Moreover, even assuming that Plaintiff had alleged exhaustion or asserted that exhaustion would have been futile, her Title VII claims must still be dismissed for failure to state a plausible claim for relief.

           ***1.***      ***Plaintiff fails to adequately allege exhaustion of remedies or that exhaustion would have been futile.***

"Before bringing suit under Title VII in federal court, a plaintiff must first file a charge with the [Equal Employment Opportunity Commission ("EEOC")]." *Webb v. City of Phila.*, 562 F.3d 256, 262 (3d Cir. 2009). "In Title VII actions, failure to exhaust administrative remedies is an affirmative defense in the nature of statute of limitations" and "the defendant bears the burden of pleading and proving that the plaintiff has failed to exhaust administrative remedies." *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997) (citations omitted). "The purpose of this administrative exhaustion requirement is to put the EEOC on notice of the plaintiff's claims and afford it 'the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.'" *Webb*, 562 F.3d at 262 (citation omitted).

Here, Plaintiff does not allege that she filed a complaint with the EEOC or otherwise exhausted her administrative remedies prior to initiating this action. (*See generally* Am. Compl.)

In opposition, however, Plaintiff asserts that bringing this action to the EEOC would have been "futile" because the vaccine mandate was "unnegotiable." (Pl.'s Opp'n Br. 3-5, ECF No. 20.)

The Court is not so persuaded. A plaintiff seeking "to invoke the futility exception to exhaustion . . . must 'provide a clear and positive showing' of futility before the [d]istrict [c]ourt." *Wilson v. MVM, Inc.*, 475 F.3d 166, 175 (3d Cir. 2007) (quoting *D'Amico v. CBS Corp.*, 197 F.3d 287, 293 (3d Cir. 2002)). Furthermore, the Third Circuit describes five non-exclusive factors that district courts weigh in assessing whether to excuse exhaustion on futility grounds. *See Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 250 (3d Cir. 2002). These factors include: (1) whether the plaintiff diligently pursued administrative relief; (2) whether the plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) the existence of a fixed policy denying benefits; (4) the failure of the insurance company to comply with its own internal administrative procedures; and (5) the testimony of plan administrators that any administrative appeal was futile. *Id.*

Here, Plaintiff does not plead futility pursuant to the factors listed in *Harrow*, nor does Plaintiff elaborate as to why an attempt to exhaust would have been futile in her opposition. (Pl.'s Opp'n Br. 4.) Instead, Plaintiff's sole argument of futility—that the vaccine mandate was "unnegotiable"—is contradicted by her own allegation that Integra permitted employees to submit exemption requests and granted at least a "few" of them. (Am. Compl. ¶ 11.) Accordingly, the Court finds that Plaintiff has failed to demonstrate that exhaustion would have been futile. *Brown v. Warden Canaan USP*, 763 F. App'x 296, 297 (3d Cir. 2019) (affirming district court's dismissal of complaint where plaintiff "failed to allege facts to support a finding that exhaustion would have been futile"); *Haydt v. Loikits*, No. 99-4342, 2000 WL 1848598, at *2 (E.D. Pa. Dec. 19, 2000)

6

(dismissing Title VII claim on a motion to dismiss where plaintiff failed to provide adequate reasoning as to "why she was unable to cooperate with the EEOC").[5]

### 2. *Plaintiff fails to adequately allege a "sincerely held religious belief" to sustain a claim for discrimination or retaliation under Title VII.*

Even if the Court were to assume, arguendo, that exhaustion would have been futile, Plaintiff's Title VII claims still fail on the merits.[6] To allege a prima facie case of religious discrimination, Plaintiff must allege that: (1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed the employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement. *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 224 (3d Cir. 2000). As to what qualifies as a religious belief, the Third Circuit has adopted the following definition of religion:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

*Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981).

Here, Plaintiff broadly alleges that Integra's vaccination policy conflicted with her "sincerely held religious beliefs." (Am. Compl. ¶ 60.) The Amended Complaint, however, is

---

[5] Plaintiff also asserts that exhaustion is "unnecessary" because of Integra's "clear and unambiguous constitutional violation." (Pl.'s Opp'n Br. 3-4.) A "mere allegation of a constitutional deprivation," however, will not excuse a plaintiff's failure to exhaust the available administrative remedies. *Lower Alloways Creek Twp. v. U.S. Nuclear Regul. Comm'n*, 481 F. Supp. 443, 449 (D.N.J. 1979). Moreover, as the Court moves on to find, Plaintiff fails to adequately allege her "religious belief" that Integra discriminated or retaliated against. Accordingly, at this stage, the Court cannot conclude that the decision to deny Plaintiff a religious exemption "clearly and unambiguously violate[d]" Plaintiff's constitutional rights. *Id.*

[6] Parenthetically, the Court notes that failure to exhaust administrative remedies in Title VII actions does not impact this Court's subject matter jurisdiction; rather, dismissal is warranted under Rule 12(b)(6) for failure to state a claim. *See Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999); *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997).

"completely devoid of any identification of what those beliefs are." *Divine Equal. Righteous v. Overbrook Sch. for the Blind*, No. 23-846, 2023 WL 4763994, at *4 (E.D. Pa. July 26, 2023).

Without alleging what religious beliefs Plaintiff held that conflicted with Integra's vaccine mandate, Plaintiff cannot sustain a claim for religious discrimination under Title VII. *See id.* (dismissing Title VII religious discrimination claim in part because plaintiff failed to adequately allege a "religious belief that conflict[ed] with a job requirement"); *Federoff v. Geisinger Clinic*, 571 F. Supp. 3d 376, 387 (M.D. Pa. 2021) (concluding that it was "impossible" to determine whether plaintiffs adequately alleged a sincere religious belief because they provided "no information whatsoever about their beliefs" in their complaint).

Moreover, "because Plaintiff's retaliation claim is predicated on her showing a sincerely held religious belief," Plaintiff's retaliation claim fails for the same reason. *Ritter v. Lehigh Valley Health Network*, No. 22-4897, 2024 WL 643543, at *6 (E.D. Pa. Feb. 15, 2024); *McKinley v. Princeton Univ.*, No. 22-5069, 2023 WL 8374486, at *2 (D.N.J. Dec. 1, 2023) ("Where a plaintiff opposes COVID-19 mandates by an employer under Title VII" and faces an adverse employment decision, "failure to allege a sincerely held religious belief means the plaintiff fails to state a claim for religious discrimination . . . or retaliation."). Accordingly, Plaintiff's Title VII claims (Counts IV and V) are dismissed without prejudice.

### B.   State Law Claims (Counts I, II, and III)[7]

#### *1.   ERISA Preemption*

Turning next to Plaintiff's state law claims, the Court must first determine whether these claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). Integra argues that Plaintiff's state law claims are preempted by ERISA because the penalty that Integra charged was a "group health insurance premium surcharge on individuals who were not vaccinated" as part of Integra's ERISA health plan, and that this action was "explicitly authorized by ERISA and its associated guidance" during the COVID-19 pandemic. (Def.'s Moving Br. 11-13.)

Since ERISA preemption is an affirmative defense, the defendant "bears the burden of proving its applicability." *Seguro Medico, LLC v. Suffolk Admin. Servs., LLC*, No. 23-2495, 2024 WL 1621343, at *3 (E.D. Pa. Apr. 15, 2024). "The law in this Circuit has long been that a district court may grant a Rule 12(b)(6) motion on the basis of an affirmative defense 'if the predicate establishing the defense is apparent from the face of the complaint.'" *Brody v. Hankin*, 145 F. App'x 768, 771 (3d Cir. 2005) (quotation omitted); *see Seguro Medico, LLC*, 2024 WL 1621343, at *1 (explaining that this principle applies to ERISA preemption). "Whether a plan exists within the meaning of ERISA is 'a question of fact, to be answered in light of all the surrounding facts

---

[7] The Court proceeds to address Plaintiff's state law claims "[b]ecause CAFA provides the Court with an independent basis for subject matter jurisdiction over this lawsuit," and "the Court cannot decline pendent jurisdiction over the state law claims." *In re Nickelodeon Consumer Priv. Litig.*, No. 12-7829, 2014 WL 3012873, at *2 (D.N.J. July 2, 2014). With respect to the applicable law for these claims, the parties do not dispute, and the Court agrees, that Ohio law applies to the claim under the Ohio Prompt Pay Act, and New Jersey law applies to the breach of contract and unjust enrichment claims. *See Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 253 (3d Cir. 2010) (explaining that the Court's role in diversity cases is to apply state law); *Flaherty-Wiebel v. Morris, Downing & Sherred*, 384 F. App'x 173, 176-77 (3d Cir. 2010) (applying New Jersey law in a diversity action where the parties agreed that New Jersey law applied).

and circumstances from the point of view of a reasonable person.'" *Deibler v. United Food & Com. Workers' Loc. Union 23*, 973 F.2d 206, 209 (3d Cir. 1992) (citation omitted).

Based on the facts pleaded in the Amended Complaint, the Court is unable to determine the applicability of ERISA preemption to Plaintiff's state law claims. The problem with Integra's argument is that it presupposes that the alleged penalty was imposed on a health insurance plan, and that the underlying plan is indeed an ERISA plan. As Plaintiff correctly argues, however, she does not plead any "information regarding any surcharge or ERISA plan," (Pl.'s Opp'n Br. 5-6), and Integra does not attach the relevant health insurance plan from which the Court could determine whether the plan is governed by ERISA. *See, e.g.*, *LeMoine v. Empire Blue Cross Blue Shield*, No. 16-6786, 2018 WL 1773498, at *1 (D.N.J. Apr. 12, 2018) (considering the plan as attached to defendant's motion to dismiss to determine question of ERISA preemption). Because the Court lacks relevant facts and circumstances necessary to make an assessment as to the applicability of ERISA, the Court holds that a determination regarding ERISA preemption is premature. *See Deblasio v. Cent. Metals, Inc.*, No. 13-5282, 2014 WL 2919557 at *7-8 (D.N.J. June 27, 2014) (declining to dismiss state law claims on the basis of ERISA preemption where the Court could not "determine based on the [c]omplaint alone whether the [p]olicy constitutes an ERISA plan").

### 2.     *Violation of Ohio Prompt Pay Act (Count I)*

Moving to the merits of Plaintiff's state law claims, the Court first addresses Plaintiff's claim for unpaid wages under the Ohio Prompt Pay Act. Integra moves to dismiss this claim on the grounds that Plaintiff is precluded from bringing this claim because the wages owed to her are disputed. (Def.'s Moving Br. 15-16.) Specifically, Integra argues that because the Ohio Prompt Pay Act states that a defendant is liable for unpaid wages where "no contest, court order or dispute"

exists over the nonpayment, and here, a dispute exists, Plaintiff is barred from asserting a claim under this statute. (*Id.*)

The relevant portions of the Ohio Prompt Pay Act read as follows:

> (A) Every employer doing business in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month . . . .
>
> (B) Where wages remain unpaid for thirty days beyond the regularly scheduled payday or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employee of a claim or for sixty days beyond the date of the agreement, award, or other act making wages payable and *no contest, court order or dispute of any wage claim including the assertion of a counterclaim exists* accounting for nonpayment, the employer, in addition, as liquidated damages, is liable to the employee in an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater.

O.R.C. § 4113.15 (emphasis added).

In a diversity case, the Court "must interpret substantive state law in accordance with rulings of the state's highest court."[8] *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 435 (D.N.J. 2012). "In the absence of guidance from the state's highest court," a district court analyzing state law must "look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue," as well as to "analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Norfolk*

---

[8] As explained *supra*, CAFA provides a basis for federal courts to exercise diversity jurisdiction over state law claims between diverse parties. *See Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 183 (3d Cir. 2023).

*S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 92 (3d Cir. 2008) (internal quotations omitted) (quoting *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996).

Here, the parties have not cited, and the Court is unaware of, any authority from the Ohio Supreme Court that directly addresses whether a dispute over the nonpayment of wages precludes a plaintiff from bringing a claim under the Ohio Prompt Pay Act. (*See generally* Def.'s Moving Br.; Pl.'s Opp'n Br.) The Ohio Court of Appeals, however, has interpreted these statutory provisions and held that where there is a contest over a wage claim, "§ 4113.15, the [Ohio] Prompt Pay Act, does not apply." *Haines & Co. v. Stewart*, No. 2000-138, 2001 WL 166465, at *3 (Ohio Ct. App. Feb. 5, 2001).

Following the pronouncement in *Haines* by the Ohio Court of Appeals, the Sixth Circuit held that a legitimate dispute over the nonpayment of wages precludes a claim under the Ohio Prompt Pay Act. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 577 (6th Cir. 2009), *partially abrogated on other grounds by*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) (applying Ohio law and relying in part on *Haines* to reach its holding). Federal district courts have similarly interepted this statute to hold that "no § 4113.15 claim survives when the unpaid wage claim is disputed." *Garner v. Cleveland Clinic Found.*, 735 F. Supp. 3d 867, 880 (N.D. Ohio 2024) (citing cases) (dismissing plaintiff's claim under the Ohio Prompt Pay Act and finding that "where a dispute over the wages exists, no cause of action will lie"); *Baum v. Intertek Testing Servs.*, No. 13-1347, 2013 WL 6492372, at *4 (N.D. Ohio Dec. 10, 2013) ("A legitimate dispute exists as to the amount of commissions due to [p]laintiff, making O.R.C. § 4113.15 inapplicable."); *In re Lowe's Cos., Inc. Fair Lab. Standards Act & Wage & Hour Litig.*, 517 F. Supp. 3d 484, 515 (W.D.N.C. 2021) ("[A] bona fide dispute . . . means that [p]laintiffs cannot recover liquidated damages or other remedies under section 4113.15(B) of the [Ohio Prompt Pay Act]"); *Copley,*

*McGeeney and Tilley v. Evolution Well Servs. Operating, LLC*, No. 20-1442, 2021 WL 3370058, at *7 (W.D. Pa. Aug. 3, 2021) ("[A]n [Ohio Prompt Pay Act] claim is subject to dismissal where the [c]omplaint facially demonstrates the existence of a dispute accounting for nonpayment.").

Viewing these authorities together, the Court concludes that a plaintiff is precluded from bringing a claim under § 4113.15, the Ohio Prompt Pay Act, where a legitimate dispute exists as to what wages, if any, are due. *See e.g., Haines*, 2001 WL 166465, at *3. Here, Plaintiff challenges the legality of the company-wide policy pursuant to which Integra withheld a portion of her wages. (Am Compl. ¶ 15.) Because Integra disputes whether further wages are owed to Plaintiff, and Plaintiff's claims depend on the "resolution of common issues of law and fact," Plaintiff cannot sustain a claim under the Ohio Prompt Pay Act. *Garner*, 735 F. Supp. 3d at 881; *see O'Brien*, 575 F.3d at 577 (holding that where "defendant's liability for further wages accounted for [the] nonpayment," a dispute existed and precluded plaintiff's Ohio Prompt Pay Act claim). As such, this claim (Count I) is dismissed without prejudice.[9]

### 3. ***Breach of Contract (Count III)***

Next, Integra argues that Plaintiff's breach of contract claim should be dismissed because Plaintiff fails to identify the specific contract at issue or any specific contract provision that Integra allegedly breached. (Def.'s Moving Br. 16-17.) Plaintiff, in turn, argues that her allegations are

---

[9] Plaintiff asks the Court for permission to "amend the complaint" to allege that Integra has withheld "undisputed wages" should the Court conclude that Plaintiff fails to adequately allege a claim under § 4113.15. (Pl.'s Opp'n Br. 8.) Plaintiff, however, misconstrues the legal standard on a motion to dismiss. While the Court accepts as true all well-pleaded facts, the Court need not accept as true conclusory statements, statements of law, or unwarranted inferences cast as factual allegations. *Twombly*, 550 U.S. at 555-57. Even if Plaintiff were to allege that the withheld wages are "undisputed," such an allegation is likely to be conclusory, given that there appears to be a bona fide dispute between the parties regarding whether Plaintiff is rightfully due these wages. Nonetheless, out of an abundance of caution, the Court will permit Plaintiff to reassert this claim in a second amended complaint, should she believe that she can cure the deficiencies identified herein.

sufficient because she alleges that "there was a contract for a set amount" which "Defendant breached." (Pl.'s Opp'n Br. 9-10.)

To plead a breach of contract claim under New Jersey law, a plaintiff must allege: (1) the existence of a valid contract; (2) a breach of that contract; (3) resulting damages; and (4) that the plaintiff performed her own contractual obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citation omitted). To satisfy Rule 8(a), a plaintiff must identify the portions of the contract that were allegedly breached. *See Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815, at *7-8 (D.N.J. Sept. 4, 2012); *Entrailer Corp. v. Unbeatablesale.com, Inc.*, No. 21-10172, 2024 WL 1016200, at *4 (D.N.J. Mar. 8, 2024) ("[A] complaint's reference to an agreement and allegation of its breach is insufficient to survive dismissal because those claims are 'legal conclusion[s]' properly disregarded on a Rule 12(b)(6) motion.")

In this case, Plaintiff fails to identify any specific contract that Integra purportedly breached and entirely fails to identify or describe the provisions or terms of the agreement relevant to this dispute. Instead, Plaintiff alleges in a conclusory manner that Integra "agreed to a set salary for Plaintiff's work product," and that Integra "breached the contract" by choosing to pay her "less than her contract provided for." (Am. Compl. ¶¶ 50-52.) In failing to identify "the specific contract or provision that was allegedly breached," the terms of the contract, or how Integra breached its obligations under said contract, Plaintiff fails to state a claim for breach of contract. *Fabbro v. DRX Urgent Care, LLC*, 616 F. App'x 485, 487 (3d Cir. 2015); *Riachi v. Prometheus Grp.*, No. 16-2749, 2016 WL 6246766, at *3 (D.N.J. Oct. 25, 2016) (dismissing breach of contract claim where plaintiff generally referenced an agreement between the parties but failed to "provide any specific details as to when the parties entered a contract, what the terms of the contract were, or how

14

[d]efendants' actions might have violated those terms"). The Court, accordingly, dismisses Plaintiff's breach of contract claim (Count III) without prejudice.

### 4. *Unjust Enrichment (Count II)*

Finally, turning to Plaintiff's unjust enrichment claim, the Court finds that Plaintiff's unjust enrichment claim fails because it is duplicative of the breach of contract claim.

In New Jersey, "[a] quasi-contract claim cannot exist when there is an enforceable agreement between parties." *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733-34 (D.N.J. 2008) (citing *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 219 (App. Div. 1966)). Where a plaintiff pleads the existence of a valid contract, "the express contract binds the parties, and the court has no grounds from which to find an implied promise concerning the same subject matter." *Bowen v. Bank of Am.*, No. 14-3531, 2015 WL 5542489, at *5 (D.N.J. Sept. 18, 2015).

Plaintiff concedes in the Amended Complaint and in her briefing that there is a valid contract between the parties. (*See* Am. Compl. ¶¶ 50-51; Pl.'s Opp'n Br. at 9-10.) In addition, Plaintiff's unjust enrichment claim concerns precisely the same conduct that forms the basis of her breach of contract claim. For example, Plaintiff alleges that Integra is liable for unjust enrichment because it "refused to provide Plaintiff her full salary" and that Integra "kept said monies." (Am. Compl. ¶¶ 45-47.) Because these claims are duplicative, Plaintiff's unjust enrichment claim must be dismissed. *See SDC Info. Servs., Inc. v. Intelligroup, Inc.*, No. 11-5874, 2012 WL 2119156, at *2 (D.N.J. June 11, 2012) (dismissing unjust enrichment claim because "the facts supporting the plaintiff's unjust enrichment claim are the same facts supporting the breach of contract claims"); *Ribble Co., Inc v. Burkert Fluid Control Sys.*, No. 15-6173, 2016 WL 6886869, at *5 (D.N.J. Nov.

22, 2016) (dismissing breach of contract claim as insufficiently pled, and unjust enrichment claim as duplicative of the breach of contract claim).

**IV.     CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss is granted. The Court will issue an Order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**