**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANN MARIE MYERS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No. 24-8966 (MAS) (JTQ) |
| v. | **MEMORANDUM OPINION** |
| INTEGRA LIFESCIENCES CORP., | |
| Defendant. | |

**SHIPP, District Judge**

This matter comes before the Court upon two motions: (1) Defendant Integra Lifesciences Corp.'s ("Defendant" or "Integra") Motion to Dismiss (ECF No. 26) Plaintiff Ann Marie Myer's ("Plaintiff") Second Amended Complaint (the "SAC") (ECF No. 24); and (2) Defendant's Motion for Sanctions (ECF No. 30). Plaintiff opposed both motions (ECF Nos. 34, 35), and Defendant replied in support of both motions (ECF Nos. 33, 38). After careful consideration of the parties' submissions, the Court decides Defendant's motions without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, Defendant's Motion to Dismiss is granted in part and denied in part and Defendant's Motion for Sanctions is denied.

## I.    BACKGROUND

### A.    Factual Background[1]

Plaintiff brings the SAC on behalf of herself and those similarly situated "seeking damages arising from Defendant's unlawful religious discrimination[.]" (SAC ¶ 1, 8 ¶ 24[2], ECF No. 24.) Plaintiff began working for Defendant on January 4, 2012. (*Id.* ¶ 16.) At that time, Plaintiff and Defendant "entered into an employment contract which called for [Plaintiff] to receive an hourly salary of $15 per hour" and for Plaintiff to be paid every two weeks. (*Id.* ¶ 17.) Plaintiff performed her contractual obligations for nine consecutive years and was paid in accordance with the employment contract during those years. (*Id.* ¶¶ 19-20.)

In 2021, after the coronavirus ("COVID-19") pandemic hit, Integra informed its employees, including Plaintiff, that all employees were expected to receive the COVID-19 vaccine. (*Id.* ¶¶ 6, 21.) Plaintiff alleges that "[d]ue to her Christian religious beliefs[,] which prohibit deriving benefit from medicine utilizing aborted fetal cell technology[,] [she] could not get the vaccine." (*Id.* ¶ 22.) Plaintiff also "believed that taking such vaccines were immoral and in contrast to God's wishes, based on her own prayer, study of the bible, and discussions with her [p]astor." (*Id.*) Plaintiff, therefore, sought a religious exemption from the vaccine requirement, but Integra denied her request. (*Id.*) Plaintiff then obtained a letter from her pastor detailing why she should be exempt from the vaccine on religious grounds and asked to speak with upper management. (*Id.* ¶¶ 22-23.) Plaintiff's additional efforts were unsuccessful as "Integra blanketly

---

[1] For the purpose of considering Defendant's Motion to Dismiss, the Court accepts all factual allegations in the SAC as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2] The Court notes that Plaintiff uses paragraph numbers 24 through 33 two times. For clarity, the Court identifies the page number and paragraph number for those paragraphs cited. As an example, the cite "8 ¶ 24" refers to the paragraph 24 found on page 8.

2

refused to have any dialogue with [Plaintiff] or engage in any sort of individualized consideration." (*Id.* 6 ¶ 24.) Plaintiff claims that "[t]his pattern and practice was consistent . . . amongst all other employees voicing religious exemptions." (*Id.* ¶ 22.)

Despite Integra's representations regarding the vaccine requirement, Plaintiff chose not to get the COVID-19 vaccine "based on her religious beliefs." (*Id.* 6 ¶ 25.) Instead, Plaintiff "wanted to continue with masking and doing regular [COVID-19] testing, as she had done since the [beginning of the pandemic.]" (*Id.*) Defendant, however, "refused to offer [Plaintiff] any sort of reasonable accommodation" and began to penalize her, and other employees similarly situated, "by taking a set penalty out of their paycheck each payroll, referring to it as the Covid Unvaxxed penalty." (*Id.* 6 ¶¶ 25-26.) This penalty amounted to "approximately $46 per payroll cycle" and "continued to be taken into 2023, when [Plaintiff] remained unvaccinated." (*Id.* 6-7 ¶¶ 27-28.) Throughout this time, Plaintiff continued to work just as she had before the vaccine policy was mandated. (*Id.* 7 ¶ 29.)

Around August 2022, Plaintiff sought a promotion to qualify as a "Quality Inspector[,]" but she "was rejected for the promotion as a result of her religious beliefs, and her refusal to get vaccinated." (*Id.* 7 ¶ 30.) As a result, Plaintiff claims that "[Defendant] failed to provide any accommodation for [Plaintiff's] religious beliefs." (*Id.* 7 ¶ 31.) Plaintiff alleges that "these same circumstances were applied towards other employees of Integra, who work and reside in New Jersey." (*Id.* 7 ¶ 32.)

### B.    Procedural Background

On August 5, 2024, Plaintiff filed her initial Complaint in the Superior Court of New Jersey, Law Division, Mercer County. (Ex. A to Def.'s Not. of Removal, ECF No. 1-1.) On September 5, 2024, Defendant removed the matter to this Court and subsequently moved to

3

dismiss the initial Complaint. (Def.'s Not. of Removal, ECF No. 1; Def.'s Mot. to Dismiss Compl., ECF No. 12.) In response, Plaintiff filed her Amended Complaint on November 22, 2024. (Am. Compl., ECF No. 14.) On December 20, 2024, Defendant moved to dismiss the Amended Complaint. (Def.'s Mot. to Dismiss Am. Compl., ECF No. 16.) On July 30, 2025, the Court dismissed the Amended Complaint in its entirety and provided Plaintiff thirty days to file a second amended complaint. (July 30, 2025, Mem. Op., ECF No. 22; July 30, 2025, Order, ECF No. 23.)

On August 28, 2025, Plaintiff filed the SAC asserting the following causes of action: (1) violation of Ohio Rev. Code Ann. § 4113.15 (the "OPPA") ("Count One") (SAC ¶¶ 41-43); (2) breach of contract ("Count Two") (*id.* ¶¶ 44-48); (3) unjust enrichment ("Count Three") (*id.* ¶¶ 49-54); (4) discrimination in violation of Title VII of the Civil Rights Act ("Title VII") ("Count Four") (*id.* ¶¶ 55-60); and (5) retaliation in violation of Title VII ("Count Five") (*id.* ¶¶ 61-65). On September 25, 2025, Defendant moved to dismiss the SAC in its entirety. (Def.'s Mot. to Dismiss SAC, ECF No. 26.) Plaintiff opposed (Pl.'s Opp'n to Mot. to Dismiss, ECF No. 34) and Defendant replied (Def.'s Reply Br. to Mot. to Dismiss, ECF No. 33). On November 21, 2025, Defendant also filed a motion for sanctions. (Def.'s Mot. for Sanctions, ECF No. 30.) Plaintiff opposed (Pl.'s Opp'n to Mot. for Sanctions, ECF No. 35) and Defendant replied (Def.'s Reply Br. to Mot. for Sanctions, ECF No. 38).

## II.      **LEGAL STANDARD**

### A.      **Motion to Dismiss**

Federal Rule of Civil Procedure[3] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

_____

[3] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.    Motion for Sanctions

#### 1.    *Rule 11*

Rule 11 provides, in part, that:

> By presenting to the court a pleading . . . —whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction . . . ." Fed. R. Civ. P. 11(c). "Sanctions awarded under [Rule 11] 'are warranted only in the exceptional circumstances where a claim or motion is patently unmeritorious or frivolous.'" *Gant v. Ragone*, No. 20-1727, 2021 WL 3144620, at *1 (D.N.J. July 26, 2021) (quoting *Goldenberg v. Indel, Inc.*, No. 09-5202, 2011 WL 1134454, at *2 (D.N.J. Mar. 25, 2011)). "Indeed, the Third Circuit has recognized that Rule 11 sanctions should only be imposed in those rare instances where the evident frivolousness of a claim or motion amounts to an 'abuse[] of the legal system.'" *Id.* (alteration in original) (citation omitted). "Furthermore, even in those 'exceptional circumstances' [in which] the court may [impose sanctions], [it] is not required to" do so. *Levey v. Brownstone Inv. Grp., LLC*, No. 11-395, 2012 WL 603799, at *2 (D.N.J. Feb. 22, 2012) (quoting *Bensalem Township v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994)).

6

### 2.    *28 U.S.C. § 1927*

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Section 1927 'requires a court to find an attorney has[:] (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct.'" *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008) (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 278 F.3d 175, 188 (3d Cir. 2002)). "[T]he principal purpose of sanctions under § 1927 is 'the deterrence of intentional and unnecessary delay in the proceedings.'" *Id.* (quoting *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294, 297 (3d. Cir. 1996)). "Thus, a finding of bad faith is usually required before inherent-power sanctions are ordered, and generally a court should not resort to such sanctions unless the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 112 (3d Cir. 2011) (internal quotation marks and citation omitted).

## III.    <u>DISCUSSION</u>

The Court first turns to Defendant's Motion to Dismiss before addressing Defendant's Motion for Sanctions.

### A.    **Defendant's Motion to Dismiss**

Defendant argues that the SAC "fails for the same reasons that this Court dismissed [Plaintiff's] First Amended Complaint." (Def.'s Moving Br. in Supp. of Mot. to Dismiss ("MTD Moving Br.") 4, ECF No. 26-1.) The Court addresses each Count in turn.

### 1.    *Count One*

Defendant argues that Count One should be dismissed because: (1) no private right of action exists under OPPA; and (2) Plaintiff fails to state a claim upon which relief can be granted as OPPA only covers "***undisputed*** wages" but Plaintiff's allegations are based on disputed wages. (*Id.* at 11-14 (emphasis in original).) The Court agrees that Plaintiff has failed to state a claim pursuant to OPPA.

In pertinent part, OPPA provides that:

> (A) Every employer doing business in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month. If at any time of payment an employee is absent from the employee's regular place of labor and does not receive payment of wages through an authorized representative, such person shall be entitled to said payment at any time thereafter upon demand upon the proper paymaster at the place where such wages are usually paid and where such pay is due . . . .
>
> (B) Where wages remain unpaid for thirty days beyond the regularly scheduled payday or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employee of a claim or for sixty days beyond the date of the agreement, award, or other act making wages payable and *no contest[,] court order or dispute of any wage claim including the assertion of a counterclaim exists* accounting for nonpayment, the employer, in addition, as liquidated damages, is liable to the employee in an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater.

Ohio Rev. Code Ann. § 4113.15 (emphasis added).

In its July 30, 2025, Memorandum Opinion (the "Opinion"), this Court "conclude[d] that a plaintiff is precluded from bringing a claim under § 4113.15, the [OPPA], where a legitimate dispute exists as to what wages, if any, are due." (July 30, 2025, Mem. Op. 13 (citing *Haines & Co. v. Stewart*, No. 00-138, 2001 WL 166465, at *3 (Ohio Ct. App. Feb. 5, 2001)).) The Court

8

further reasoned that "[b]ecause Integra disputes whether further wages are owed to Plaintiff, and Plaintiff's claims depend on the 'resolution of common issues of law and fact,' Plaintiff cannot sustain a claim under the [OPPA]." (*Id.* (first quoting *Garner v. Cleveland Clinic Found.*, 735 F. Supp. 3d 867, 881 (N.D. Ohio 2024); and then citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 579 (6th Cir. 2009) (holding that where "defendant's liability for further wages accounted for [the] nonpayment,' a dispute existed and precluded plaintiff's OPPA claim), *partially abrogated on other grounds*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)).) In its Opinion, the Court cautioned Plaintiff that "[e]ven if Plaintiff were to allege that the withheld wages are 'undisputed,' such an allegation is likely to be conclusory, given that there appears to be a bona fide dispute between the parties regarding whether Plaintiff is rightfully due these wages." (*Id.* at 13 n.9.)

In the SAC, Plaintiff alleges that "[d]espite the lack of any legitimate dispute as to the funds which [Plaintiff] was entitled to, Integra chose to penalize her undisputed salary" and Integra "repeatedly withheld payroll, as a penalty against Plaintiff for her religious beliefs" in violation of OPPA. (SAC 6 ¶ 26, ¶ 43.) The Court, however, finds this categorization of the wages as "undisputed" to be no more than conclusory in nature. As the Court cautioned in its Opinion, "the Court need not accept as true conclusory statements, statements of law, or unwarranted inferences cast as factual allegations." (July 30, 2025, Mem. Op. 13 n.9 (citing *Twombly*, 550 U.S. at 555-57).) Where, as here, there is a bona fide dispute regarding whether Defendant owes Plaintiff any wages, a claim under OPPA is not appropriate.

The Court, therefore, finds that Plaintiff has failed to state a claim for **undisputed** wages in accordance with OPPA. *See* Ohio Rev. Code Ann. § 4113.15. Defendant's motion to dismiss Count One is, accordingly, granted.[4]

### 2.    *Count Two*

Defendant argues that Count Two should be dismissed because Plaintiff fails "to plead that she was promised any specific amount *after* deductions" and "fail[s] to assert a breach of a specific provision of her contract[.]" (MTD Moving Br. 15-16 (emphasis in original).) The Court disagrees.

To plead a breach of contract claim under New Jersey law, a plaintiff must allege: (1) the existence of a valid contract; (2) a breach of that contract; (3) resulting damages; and (4) that the plaintiff performed her own contractual obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citation omitted). To satisfy Rule 8(a), a plaintiff must identify the portions of the contract that were allegedly breached. *See Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815, at *7-8 (D.N.J. Sep. 4, 2012); *Etrailer Corp. v. Unbeatablesale.com, Inc.*, No. 21-10172, 2024 WL 1016200, at *4 (D.N.J. Mar. 8, 2024) ("[A] complaint's reference to an agreement and allegation of its breach is insufficient to survive dismissal because those claims are 'legal conclusion[s]' properly disregarded on a Rule 12(b)(6) motion" (second alteration in original) (citation omitted)).

Here, Plaintiff now alleges in the SAC that: (1) the parties entered into an employment contract in January of 2012 that specified a rate of pay of $15 per hour and provided for Plaintiff to be paid every two weeks (SAC ¶¶ 16-17); (2) Defendant breached the contract when it took a set penalty out of Plaintiff's paycheck of approximately $46 per payroll cycle, such that Plaintiff was not paid "her full contractual rate" (*id.* 6-7 ¶¶ 26-27, ¶ 47); (3) Plaintiff suffered damages in

---

[4] The Court need not reach Defendant's other argument in favor of dismissing Count One.

the form of missing wages (*id.* ¶ 48); and (4) Plaintiff continued to fulfill her contractual obligations after the vaccine mandate policy was imposed (*id.* ¶ 29). "[C]onstru[ing] the [SAC] in the light most favorable to . . . [P]laintiff," *see Phillips*, 515 F.3d at 233 (internal quotation marks and citation omitted), the Court finds that Plaintiff has sufficiently pleaded a breach of contract claim.

Defendant's motion to dismiss Count Two is, accordingly, denied.

### 3.    *Count Three*

Defendant argues that Count Three should be dismissed because "Plaintiff alleges repeatedly that she had a binding 'employment contract' with Integra" and, as a result Plaintiff's unjust enrichment claim "is based on the same action by Integra as the breach of contract claim[ and is] inviable and subject to dismissal." (MTD Moving Br. 17.) According to Defendant, Plaintiff also "fails to allege any 'benefit' that Integra received through making deductions . . . or how the retention of such benefit would be 'inequitable.'" (*Id.*)

Under New Jersey law, "[a]n unjust enrichment claim requires plaintiff to allege (1) at plaintiff's expense (2) defendant received [a] benefit (3) under circumstances that would make it unjust for defendant to retain [the] benefit without paying for it." *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009) (quotation marks omitted) (quoting *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004)). "Further, '[t]he unjust enrichment doctrine requires that plaintiff show that [she] expected remuneration from the defendant at the time [she] performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" *Id.* (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994)). "An unjust enrichment claim may be sustained independently as an alternative theory of recovery." *Id.* (citing *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d at 544).

As an alternative theory of recovery, Plaintiff alleges that: (1) by "completing her work satisfactorily, and Defendant receiving the benefit of Plaintiff's work product, [while] refus[ing] to provide Plaintiff her full salary[,]" Defendant was unjustly enriched (SAC ¶ 51); and (2) "Plaintiff and Defendant do not have a set contract for her employment during the relevant period of time" (*id.* ¶ 50). At this stage, and in viewing the SAC in the light most favorable to Plaintiff, such allegations are sufficient to plead a claim for unjust enrichment in the alternative to Plaintiff's breach of contract claim. *Gaviria v. Lincoln Educ. Servs. Corp.*, 547 F. Supp. 3d 450, 462 (D.N.J. 2021) ("Although a plaintiff cannot recover on both theories, unjust enrichment claims can be pleaded as an alternative, or backup, to a contract claim." (citing *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 416-17 (D.N.J. 2021))).

Defendant's motion to dismiss Count Three is, accordingly, denied.

### 4.    *Counts Four and Five*

Defendant argues that Plaintiff's Title VII claims should be dismissed because: (1) Plaintiff failed to exhaust administrative remedies; and (2) Plaintiff does not otherwise meet the "futility factors to survive dismissal without exhausting her administrative remedies." (MTD Moving Br. 5-11.) The Court agrees that dismissal is appropriate.

"Before bringing suit under Title VII in federal court, a plaintiff must first file a charge with the [Equal Employment Opportunity Commission ('EEOC')]." *Webb v. City of Philadelphia*, 562 F.3d 256, 262 (3d Cir. 2009) (citations omitted). "The purpose of this administrative exhaustion is to put the EEOC on notice of the plaintiff's claims and afford it 'the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.'" *Id.* (citations omitted). In general, "[a] complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to the suit specified by Title

12

VII: prior submission of the claim to the EEOC or conciliation or resolution." *Foster v. JLG Indus., Inc.*, 199 F. App'x 90, 93 (3d Cir. 2006) (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997)).

A futility exception to the exhaustion requirement exists, however, which may "merit waiver of the exhaustion requirement when [plaintiff] provide[s] a 'clear and positive showing of futility.'" *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002) (citations omitted); *see also Wilson v. MVM, Inc.*, 475 F.3d 166, 175 (3d Cir. 2007) ("In order to invoke the futility exception to exhaustion, a party must 'provide a clear and positive showing' of futility before the [d]istrict [c]ourt." (quoting *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002))). The Third Circuit has identified five non-exclusive factors that district courts weigh in assessing whether to excuse failure to exhaust on futility grounds:

> (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure . . . to comply with its own internal administrative procedures; and (5) testimony . . . that any administrative appeal was futile.

*Harrow*, 279 F.3d at 250.

Plaintiff argues in opposition to Defendant's Motion to Dismiss, (*see* Pl.'s Opp'n Br. to Mot. to Dismiss 4), that the futility exception applies because Plaintiff alleged in the SAC that: (1) "Integra adopted and implemented a policy, practice[,] or pattern to deny religious accommodation requests" (SAC ¶ 12); (2) "Integra denied all religious accommodation requests submitted by Integra employees" (*id.* ¶ 13 (emphasis omitted)); (3) "Defendant acted in accordance with a common policy, plan, or practice" (*id.* ¶ 15); (4) "Integra informed [Plaintiff] that there would be no religious exemption. . . . [as] [t]his pattern and practice was consistent with what [Plaintiff] witnessed amongst all other employees voicing religious exceptions" (*id.* ¶ 22);

13

and (5) "these same circumstances were applied towards other employees of Integra" (*id.* at 7 ¶ 32). Plaintiff does not otherwise allege exhaustion of administrative remedies in the SAC. (*See generally* SAC.)

The Court agrees with Defendant that Plaintiff "does not meet the narrow exception for futility." (*See* MTD Moving Br. 9.) Beyond conclusory and general allegations that Defendant has a pattern or practice of denying accommodation requests, Plaintiff alleges no facts that go to any other factors analyzed under *Harrow*. (*See generally* SAC.) Without more, Plaintiff has failed to satisfy its pleading standard for its Title VII claims by either pleading an exhaustion of administrative remedies or alleging facts that establish a "clear and positive showing of futility." *Foster*, 199 F. App'x at 93; *Harrow*, 279 F.3d at 249, 250 ("Given the policies underlying the exhaustion requirement, [some] courts have been reluctant to grant the exception without clear evidence of futility."); *Carlson v. Gerdau AmeriSteel Corp.*, No. 04-1566, 2005 WL 8175971, at *3 (D.N.J. Sep. 21, 2005) ("[T]his is a narrow exception, and the plaintiff bears the burden of proving that the futility exception applies to its case."); *Handle v. Brennan*, No. 15-8071, 2019 WL 168830, at *5 (D.N.J. Jan. 11, 2019) (dismissing complaint for failing to exhaust administrative remedies where plaintiff "has not adequately pursued administrative relief and did not act reasonably in seeking judicial review[,] . . . has not pled any allegations of the existence of a fixed policy denying benefits, nor that . . . the EEOC failed to comply with its own internal administrative procedures"); *Haydt v. Loikits*, No. 99-4342, 2000 WL 1848598, at *2 (E.D. Pa. Dec. 19, 2000) (dismissing Title VII claim because plaintiff failed to exhaust her administrative remedies and plaintiff did not otherwise "submit[] any reason as to why she was unable to cooperate with the EEOC").

The Court, accordingly, grants Defendant's Motion to Dismiss Counts Four and Five.

## B.    Defendant's Motion for Sanctions

Having addressed Defendant's Motion to Dismiss, the Court now turns to Defendant's Motion for Sanctions. Integra argues that this Court should impose sanctions pursuant to Rule 11 and 28 U.S.C. § 1927 in the form of: (1) "order[ing] Plaintiff's payment of Defendant's costs and fees associated with bringing this Motion [for Sanctions] and the Motion to Dismiss; and [(2)] order[ing] any other relief the Court deems appropriate in favor of Defendant and against Plaintiff and Plaintiff's Counsel[.]" (Def.'s Moving Br. in Supp. of Mot. for Sanctions ("Sanctions Moving Br.") 8, ECF No. 30-1.) In support of its Motion for Sanctions, Defendant argues that Plaintiff's filing of the SAC was "improper and made in bad faith[,]" which has "prejudiced Defendant and needlessly caused [it] to incur significant expenses to defend against claims that have already been settled." (*Id.*) The Court disagrees.

Here, the Court notes that Defendant filed its Motion for Sanctions *before* the Court ruled on Integra's then-pending Motion to Dismiss Plaintiff's SAC. (*See generally* Def.'s Mot. to Dismiss SAC.) The Court, however, has now ruled on that motion, granting it in part and denying it in part, and finding that Plaintiff adequately alleged claims for breach of contract and unjust enrichment.

The Court, therefore, is not persuaded by Integra's arguments that the SAC was no more than "a frivolous repackaging of claims." (Sanctions Moving Br. 1.) To the contrary, the Court has found that two of Plaintiff's claims alleged in the SAC passed muster at the motion to dismiss stage. The Court, therefore, finds that sanctions against Plaintiff pursuant to Rule 11 or 28 U.S.C.

15

§ 1927 are not appropriate at this time.[5] *See, e.g.*, *United States ex rel. Jersey Strong Pediatrics, LLC v. Wanaque Convalescent Ctr.*, No. 14-6651, 2019 WL 7116208, at *2 (D.N.J. Nov. 25, 2019) ("This Court's denial of [d]efendants' motions to dismiss indicates that [plaintiff's] allegations are plausible. Thus, [d]efendants' Rule 11 position, that the complaint offered no cognizable legal theory, was also rejected."), *R. & R. adopted*, 2019 WL 7049449 (D.N.J. Dec. 23, 2019); *Sun Chem. Corp. v. Fike Corp.*, No. 13-4069, 2018 WL 3492143, at *5 (D.N.J. July 20, 2018) (denying motion for sanctions under § 1927 where defendants did not meet their burden in showing that plaintiff or plaintiff's counsel acted in bad faith in pursuing claims based on alleged misrepresentations).

## IV.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendant's Motion to Dismiss and denies Defendant's Motion for Sanctions. The Court will issue an order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: _____6/29/_____, 2026

---

[5] The Court recognizes that it took Plaintiff multiple times to adequately allege any claims. The Court, however, still does not find that sanctions against Plaintiff are appropriate at this time, in part because there is no evidence that Plaintiff acted with bad faith. *See, e.g.*, *Levey*, 2012 WL 603799, at *2 (noting court is not required to impose sanctions under Rule 11); *LaSalle Nat'l Bank v. First Conn. Holding Grp., LLC*, 287 F.3d 279, 289 (3d Cir. 2002) ("[S]anctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal.").